861 P.2d 663

**The STATE of Arizona, Appellee/Respondent,**

v.

**Jesse Michael BOLDREY, Appellant/Petitioner.**

**Nos. 2 CA–CR 90–0403, 2 CA–CR 92–0411–PR.**

Court of Appeals of Arizona, Division 2, Department B.

Jan. 29, 1993.

Review Denied Oct. 19, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie and Diane M. Ramsey, Phoenix, for appellee/respondent.

Susan A. Kettlewell, Pima County Public Defender by Susan M. Quillin, Tucson, for appellant/petitioner.

## OPINION

DRUKE, Presiding Judge.

Appellant was convicted by a jury in April 1990 of four counts of sexual abuse and molestation involving his then 11–year–old daughter. The trial court sentenced him to consecutive prison terms of 12 years, 19 years, 19 years and 22 years. Appellant's appeal has been consolidated with his petition for review of the denial of his petition for post-conviction relief under Ariz.R.Crim.P. 32, 17 A.R.S. We affirm.

Appellant contends that the trial court erred in summarily dismissing his Rule 32 petition. The petition raised two claims: (1) newly discovered evidence (the fact that the victim had had intercourse before as she had previously been molested and that the presentence report was biased and one-sided) and (2) a "significant change in the law" requiring resentencing, that is, the supreme court's decision in *State v. Bartlett*, 164 Ariz. 229, 792 P.2d 692 (1990) (*Bartlett I*).[1] The trial court need only conduct an evidentiary hearing where the defendant has raised a colorable claim for relief. *State v. Adamson*, 136 Ariz. 250, 665 P.2d 972, *cert. denied*, 464 U.S. 865, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983). To be colorable, the claim must have the appearance of validity, a determination that the trial court is in a better position to make than this court. *Id.*

The first claim is that the evidence that the victim had been previously molested by her uncle would likely change the verdict because a crucial portion of the state's case was based on medical testimony that the victim's hymen was absent and her vaginal opening was dilated, consistent with her having had intercourse. Appellant argues that the evidence would refute the inference that appellant necessarily caused this physiological condition. The trial court rejected the claim, finding that it would not have changed the verdict: "[t]he Court recollects that the evidence against the defendant based on the victim's testimony and the defendant's admission to the police officers was overwhelming...." Because the record supports the court's finding, we cannot say its conclusion that post-conviction relief was not warranted was an abuse of discretion. *Id.; see also State v. Bilke*, 162 Ariz. 51, 781 P.2d 28 (1989).

Similarly, we cannot say that the trial court abused its discretion in summarily rejecting the claim that the sentencing procedure was unfair. Appellant claims as unfair the fact that neither the victim nor her mother was personally contacted and the report only contains the victim's negative statements, given by her aunt and others. Appellant contends that the victim was saddened by the fact that she will no longer have a relationship with her father and that she and her mother, appellant's ex-wife, are shocked at the sentencing result. The trial court, which heard the trial and sentenced appellant, found that even assuming appellant's claims to be true, it would still have found the same aggravating factors based on the victim's trial testimony: the fact that appellant molested his own daughter and the trauma to her. We see no reason to interfere with the trial court's resolution of this claim.

We also agree that, to the extent that these could have been considered mitigating factors, the trial court correctly concluded that appellant waived them by failing to raise them at sentencing. Additionally, appellant did not present affidavits or other support for his contentions in the Rule 32 petition. *See* Ariz.R.Crim.P. 32.5, 17 A.R.S. Even assuming them to be true, appellant has not shown how this is newly discovered evidence. No reason is given for the fact that none of this was presented at sentencing. We can infer from the trial court's decision that it would have imposed the same sentence in any event. Nothing would change the fact that the victim is

---

1. We note that in his appellate brief, appellant mischaracterizes his Rule 32 claim as having been based on *State v. Bartlett*, 171 Ariz. 302, 830 P.2d 823 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 511, 121 L.Ed.2d 445 (1992) (*Bartlett II*), in which our supreme court reconsidered *Bartlett I*, pursuant to the United States Supreme Court's order, in light of *Harmelin v. Michigan*, 501 U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).

appellant's daughter, the factor the trial court found to be "the biggest aggravating factor," and the court would still have concluded that the victim had been traumatized, notwithstanding the purported mitigating circumstances raised for the first time in the Rule 32 petition.

■ The trial court also correctly rejected the claim based on *Bartlett I.* The court stated that it was well aware of *Bartlett I* when it sentenced appellant. Nor does *Bartlett II* change the outcome of this case. Appellant was entrusted with the care of his own 11–year–old daughter and abused that trust, engaging in repeated sexual acts with her. We cannot say that appellant has made even a threshold showing of gross disproportionality. *Harmelin v. Michigan, supra.* This case is not at all like *Bartlett,* which involved an immature defendant who engaged in consensual sex with two female victims who were close to their fifteenth birthdays.

Appellant's final claim is that A.R.S. § 13–604.01(J) is unconstitutional as applied to him and that it was not intended to be applied where multiple counts arise from "an uninterrupted sequence of events." One of appellant's constitutional claims is essentially a reassertion of his *Bartlett* argument which we have already rejected. He characterizes his second claim as a due process claim although it is actually an equal protection argument; he contends that there is no rational basis for punishing more severely a child molester who touches his victim before intercourse than one who "abruptly and forcibly rapes a child without first touching them." In an overlapping argument, appellant claims that the legislature could not have intended the result here and that its purpose was to punish severely repeat offenders, not several acts that "occur[ ] in fairly rapid-fire succession." He contends that these acts were all part of one "transaction" and that consecutive sentences were improper, citing the Alaska case of *State v. Andrews,* 707 P.2d 900 (Alaska App.1985).

All claims but that based on *Bartlett,* which we have rejected, were waived, absent fundamental error, by appellant's failure to raise them below. *See State v. Tison,* 129 Ariz. 526, 633 P.2d 335 (1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982); *State v. Lopez,* 170 Ariz. 112, 822 P.2d 465 (App.1991). The imposition of the statutorily mandated consecutive sentences here did not result in fundamental error.

■ Multiple sexual acts that occur during the same sexual attack may be treated as separate crimes. *State v. Phillips,* 102 Ariz. 377, 430 P.2d 139 (1967); *State v. McCuin,* 167 Ariz. 447, 808 P.2d 332 (App. 1991), *vacated in part on other grounds,* 171 Ariz. 171, 829 P.2d 1217 (1992). Section 13–604.01(J) requires that the sentence imposed for a dangerous crime against a child be "consecutive to any other sentence imposed on the person at any time" and does not make an exception or distinction for crimes committed as part of one sexual episode. The legislative intent behind § 13–604.01(J), as reflected by its clear language and its history, is to impose separate and severe punishment for each and every dangerous crime against children.

■ The result here does not violate appellant's equal protection rights. Particularly because the victim was a child, each factually distinct act of forcible sexual contact exposed her to a separate harm. The legislature's determination to punish more severely a defendant who subjects a child to a greater number of acts and, therefore, greater suffering has a rational basis. *See Marshall v. U.S.,* 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974); *State v. White,* 168 Ariz. 500, 815 P.2d 869 (1991), *cert. denied,* — U.S. —, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992). *See also* Stanley G. Feldman and David L. Abney, "The Double Security of Federalism: Protecting Individual Liberty Under the Arizona Constitution," 20 Ariz.St.L.J. 115, 140 (1988).

■ We also reject appellant's "one transaction" argument. We believe this argument is, in essence, a double punishment argument requiring consideration of

A.R.S. § 13–116,[2] which prohibits double punishment for one "act" or "omission," and our supreme court's interpretation of that provision in *State v. Gordon*, 161 Ariz. 308, 778 P.2d 1204 (1989). Because of the potential conflict between A.R.S. § 13–604.-01(J) and the limitations contained in § 13–116, we must decide whether consecutive terms under the circumstances of this case would violate the latter statute.

We note at the outset the difficulty of applying the *Gordon* analysis to the facts of this case. The victim testified that appellant lay down on the bed beside her, touched her vagina, touched her breast, forced her to touch his penis and had intercourse with her. It appears that what occurred was, indeed, "a single episode" of sexual conduct, *see State v. Taylor*, 160 Ariz. 415, 421, 773 P.2d 974, 980 (1989), which culminated in intercourse.

After reviewing approaches from other jurisdictions to determine what constitutes an "act" within the meaning of § 13–116, the *Gordon* court added to the previously-applied "identical elements" test of *State v. Tinghitella*, 108 Ariz. 1, 491 P.2d 834 (1971), as follows:

> Thus, we will continue to apply *Tinghitella* and judge a defendant's eligibility for consecutive sentences by considering the facts of each crime separately, subtracting from the factual transaction the evidence necessary to convict on the ultimate charge—the one that is at the essence of the factual nexus and that will often be the most serious of the charges. If the remaining evidence satisfies the elements of the other crime, then consecutive sentences may be permissible under A.R.S. § 13–116. In applying this

analytical framework, however, we will then consider whether, given the entire "transaction," it was factually impossible to commit the ultimate crime without also committing the secondary crime. If so, then the likelihood will increase that the defendant committed a single act under A.R.S. § 13–116. We will then consider whether the defendant's conduct in committing the lesser crime caused the victim to suffer an additional risk of harm beyond that inherent in the ultimate crime. If so, then ordinarily the court should find that the defendant committed multiple acts and should receive consecutive sentences.

*State v. Gordon* at 315, 778 P.2d at 1211. Although the language of *Gordon* is somewhat unclear, it appears that in applying the analysis to the charges and facts in that case, the supreme court implied that the question of whether the lesser crime increased the risk of harm inherent in the ultimate crime need not even be reached if either the *Tinghitella* test or the "factually impossible" test of *Gordon* are not satisfied. To illustrate, then, there was sufficient separate evidence to convict appellant of each of the charges, thus satisfying the *Tinghitella* test. Unlike *Gordon*, however, in which the sexual assault could not have been committed without the burglary, appellant in this case could have had sexual intercourse with the victim (the crime we will assume, for purposes of this discussion, is the ultimate crime[3]) without committing the remaining crimes. That is to say, it was not "factually impossible" for appellant to have had sexual intercourse with the victim without touching her vagi-

2. The single transaction standard for application of the federal constitutional prohibition against double jeopardy has been repeatedly rejected by the United States Supreme Court. *See Garrett v. U.S.*, 471 U.S. 773, 790, 105 S.Ct. 2407, 2417, 85 L.Ed.2d 764, 779 (1985). There is nothing in Arizona's jurisprudence to suggest that this state's constitutional prohibition against double jeopardy, Ariz.Const. art. II, § 10, would be construed any differently than the federal constitution has been. *See e.g. Quinton v. Superior Court*, 168 Ariz. 545, 815 P.2d 914 (App. 1991).

3. Although we have presumed that sexual intercourse is the ultimate crime for purposes of this discussion, it is possible to infer from § 13–604.01(J), at least with respect to dangerous crimes against children, the legislative conclusion that there is no "ultimate crime" and that all such offenses carry equal weight for purposes of consecutive sentencing. In *Gordon* the ultimate crime was clearly sexual assault. Burglary and kidnapping were precursors to that crime. In the case of a single episode involving several sexual crimes against a child *Gordon* is difficult, if not impossible, to apply.

na with his hand, touching her breasts, or having the victim touch his penis. Thus, we need not even consider whether the other offenses increased appellant's risk of harm before we are able to conclude that consecutive terms are permissible under § 13–116. Because they are permissible under that statute, there is no conflict with § 13–604.01(J) and the mandatory consecutive terms were permissible.

We have reviewed the entire record for fundamental error and, having found none, we affirm the convictions and the sentences imposed.

FERNANDEZ and ESPINOSA, JJ., concur.